**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules-1-8/**

**October 13, 2023**

# In the Court of Appeals of Georgia

A23A0726. IN THE INTEREST OF C. B., et al., children.

MARKLE, Judge.

Patrick Boehm, the father of two minor children, appeals from the juvenile court's orders terminating his parental rights and denying his motion for new trial. On appeal, Boehm challenges the sufficiency of service of the summons and complaint, as well as the sufficiency of the evidence supporting the termination order. For the reasons that follow, we affirm.

On appeal from a juvenile court's decision to terminate parental rights, we review the evidence in the light most favorable to the court's decision and determine whether any rational trier of fact could have found by clear and convincing evidence that the parental rights should be terminated. In doing so, we do not weigh the evidence or resolve credibility issues, but merely determine whether a rational trier of fact

could have found by clear and convincing evidence that the natural parent's right to custody should be terminated.

(Citation omitted.) *Interest of L. B.*, 356 Ga. App. 488, 489 (1) (847 SE2d 861) (2020).

So viewed, the record shows that Boehm and his former wife, Kelley, are the biological and legal parents of two young boys. In 2019, Kelley initiated divorce proceedings against Boehm after she found narcotics and drug paraphernalia hidden in their home, including under their son's crib. The divorce decree granted Kelley primary legal and physical custody of the children, and obligated Boehm to pay child support, beginning in March 2019, as well as to submit to and pass a drug screening prior to visiting the children.

In January 2022, Kelley filed a petition to terminate Boehm's parental rights. The return of service indicated that Boehm was personally served a week after the petition was filed. Boehm failed to appear at the noticed pretrial conference. However, he appeared, pro se, at the termination hearing in April 2022, and contested the sufficiency of service of process. [1] Boehm argued that the address listed on the

---

[1] We note that Boehm could raise the defense of insufficiency of service of process for the first time at the termination hearing, as he was not required to file a response to the petition under the Juvenile Code. See OCGA §§ 9-11-12 (b) (5) ("If

return of service belonged to his mother, and he was not living there at that time. Boehm stated that he had been homeless and jobless for the previous three years,[2] but that his mother notified him of the present action.

The juvenile court proceeded with the termination hearing. Boehm testified that his mother put him on the phone with the deputy who was attempting to perfect service, and he then directed the deputy to leave the court documents with his mother. Boehm again denied that he was living at his mother's home at the time of service, but admitted that he was living there by the time of the hearing — three months after the date of service on the return.

---

a pleading sets forth a claim for relief to which the adverse party is not required to serve a responsive pleading, he may assert at the trial any defense in law or fact to that claim for relief."); 15-11-281 (a) (directing the court to issue the summons, which sets forth a requirement for the adversarial party "to appear before the court at the time fixed *to answer the allegations of the petition*.") (emphasis supplied); 15-11-284 (setting forth the statutory notice to adversarial party, and making no mention of any requirement to file an answer); see also OCGA § 15-11-4 (2) (incorporating procedures from Civil Practice Act in termination proceedings when not provided under the Juvenile Code); cf. *In the Interest of S. J. M.*, 225 Ga. App. 703, 704 (484 SE2d 764) (1997) ("[B]y failing to raise the issue at the termination hearing, the mother waived the issue of insufficiency of process or service of process.").

[2] Boehm's testimony as to this issue is contradictory. He later testified that he "bounced" from job to job during that time frame. We further note that Boehm initially stated he did not retrieve the petition and court notice from his mother until the date of the pretrial conference had passed, but then stated he failed to attend the conference because he made a "mistake" as to the dates.

Additionally, Boehm admitted that he had never paid any child support and he was in arrears of approximately $40,000. He also admitted that he had not contacted his children, nor sent them letters or gifts, for the past three years. He further acknowledged that he had not taken a drug screening test as required by the divorce court in order to visit the children, and that Kelley would have allowed him to see the children if he had complied with the court's order and tested negative. Finally, Boehm testified that he had not been using drugs and he could presently pass a drug screening test, although he still had not taken one; and he reported that he currently had a job for about a month.

Kelley testified that the last time Boehm saw the children, they were four months old and two years old, respectively. She recounted that the older son had repeatedly asked her if his father were dead. The guardian ad litem testified that it was in the children's best interest to terminate Boehm's parental rights due to his inconsistency as a parent and his absence from their lives. At the close of the evidence, the juvenile court terminated Boehm's parental rights. He filed a motion for new trial, which the court denied after a hearing. Boehm filed his application for discretionary appeal, which we granted, and this appeal followed.

1. Boehm first contends that the juvenile court lacked jurisdiction to terminate his parental rights because the service of the summons and petition was defective. We disagree.

As we have explained,

> [w]here a defendant claims there was a failure of service, the trial court has the authority to decide as a factual matter whether service has occurred. This finding will not be disturbed as long as there is some evidence to support it. Further, when a defendant in a lawsuit challenges the sufficiency of service, he bears the burden of showing improper service. The process server's return of service can only be set aside upon evidence which is not only clear and convincing, but the strongest of which the nature of the case will admit.

(Citations and emphasis omitted.) *Newsome v. Johnson*, 305 Ga. App. 579, 581 (1) (699 SE2d 874) (2010). Our review is for abuse of discretion. *Duke v. Buice*, 249 Ga. App. 164, 166 (547 SE2d 561) (2001). "When the evidence is conflicting with respect to the proper receipt of service, as here, it becomes a question of fact to be resolved by the trial judge. Those findings will not be disturbed on appellate review when supported by any evidence." (Citation and punctuation omitted.) Id.

Under OCGA § 9-11-4 (e) (7), personal service is achieved "by delivering a copy of the summons attached to a copy of the complaint . . . to the defendant

5

personally, or by leaving copies thereof at the defendant's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein[.]"

Here, the return of service indicated that Boehm was personally served with the petition. In a subsequent affidavit, the deputy stated that, when he attempted to serve Boehm at the listed address in Perry, Georgia, Boehm's mother answered and indicated that Boehm was "out of town," but she provided Boehm's phone number. The deputy immediately called Boehm, who confirmed that he was "out of town," and directed the deputy to leave the documents with his mother, which the deputy then did. Importantly, neither Boehm nor his mother indicated that he did not live there. Rather, it can be reasonably inferred from these exchanges with the deputy that Boehm actually did live there, or at the very least, it was his "usual place of abode." OCGA § 9-11-4 (e) (7). Thus, by leaving the documents with the mother, the deputy notoriously, and thus personally, served Boehm under OCGA § 9-11-4 (e) (7).[3]

Notably, Boehm's testimony at the termination hearing confirmed that he spoke with the deputy on the phone at the time, and directed the deputy to leave the

---

[3] Boehm does not contend that his mother was not "a person of suitable age and discretion," pursuant to OCGA § 9-11-4 (e) (7).

6

documents with his mother. Although Boehm testified that he was not living with his mother at the time of service, this is the only evidence he proffered to counter the deputy's statement and the return of service.[4] . See *Newsome*, 305 Ga. App. at 581 (1) ("The process server's return of service can only be set aside upon evidence which is not only clear and convincing, but the strongest of which the nature of the case will admit.") (citations omitted). Ultimately, it was for the juvenile court to resolve the conflict in the evidence. Id. And here, the court clearly questioned Boehm's credibility, finding it "noteworthy" that Boehm testified he *was* living at his mother's house by the time of the hearing, a mere three months after service was perfected. See *Duke*, 249 Ga. App. at 166.

Under these circumstances, the juvenile court did not abuse its discretion in finding Boehm did not meet the high burden to traverse the return of service. See *Newsome v. Graham*, 365 Ga. App. 202, 203-204 (3) (877 SE2d 371) (2022); compare *Duke*, 249 Ga. App. at 166 (affirming trial court's finding of improper service where defendant provided affidavit and oral testimony that she was not living at the address of service, and her stepfather's affidavit established that he told process

---

[4] We do not intend to convey that a defendant's sworn testimony would not be sufficient to overcome a return of service in all cases.

server defendant was not living at that address); *Terrell v. Porter*, 189 Ga. App. 778 (377 SE2d 540) (1989) (where affidavits of appellee, his wife, and his father established that appellee was no longer residing at his father's house at the time of service, and father specifically told the process server such, trial court did not err in dismissing complaint for insufficient service of process).

Finally, to the extent that Boehm contends service was improper under the service procedures provided in the Juvenile Code, this argument is unavailing. OCGA § 15-11-282 (a) provides: "If a party to be served with a summons is within this state and can be found, the summons shall be served upon him or her *personally*[.]" Although the current version of the statute no longer expressly refers to OCGA § 9-11-4, see former OCGA § 15-11-96 (c) (2010), the Juvenile Code now incorporates the Civil Practice Act to the extent that the Juvenile Code does not expressly provide procedures. OCGA § 15-11-4 (2); see also OCGA § § 9-11-4 (j) ("The methods of service provided in this Code section are cumulative and may be utilized with, after, or independently of other methods of service. Whenever a statute provides for another method of service, service may be made under the circumstances and in the manner prescribed by the statute or under any other methods prescribed in this Code section."); 9-11-4 (k) (extending the service provisions of that Code section to special

statutory proceedings). As such, the method of personal service, including notorious service under OCGA § 9-11-4 (e) (7), applies here.

2. Boehm next argues that the evidence was insufficient to support the juvenile court's finding that the children's dependency was likely to continue.[5] We disagree.

Under Georgia law, the termination of parental rights is a two-step process. The juvenile court first determines whether one of the five statutory grounds under OCGA § 15-11-310 (a) is satisfied; if so, the court must then determine whether termination is in the children's best interests, pursuant to OCGA § 15-11-310 (b). *In the Interest of L-M. C. L.*, 362 Ga. App. 520, 530 (3) (869 SE2d 161) (2022).

Here, the juvenile court found the children to be dependent under OCGA § 15-11-310 (a) (5).[6] Specifically, the trial court found that

---

[5] As best we can tell, Boehm bases this argument on the fact that the juvenile court predominantly used the past tense in addressing the facts in support of its ruling that the termination was *in the best interest of the children* — and not with regard to the dependency finding — in its order on the motion for new trial. We therefore find this contention unpersuasive and limit our review to the juvenile court's finding that the dependency was likely to continue as stated in its initial order terminating Boehm's parental rights. Nor do we address the juvenile court's decision that the termination was in the best interest of the children, as Boehm does not separately challenge this issue on appeal. See *In the Interest of N. P.*, 363 Ga. App. 879, 892 (2), n. 8 (872 SE2d 501) (2022).

[6] OCGA § 15-11-310 (a) (5) provides;

the children are dependent as it pertained to [Boehm] as children lack proper parental care and control by [Boehm] as he had no communication with the children for approximately three years; returning the children to his care would be likely to cause serious mental, moral or emotional harm, as he has no relationship with them and have [sic] not shown he has conquered his drug addiction. [Boehm] is still reliant upon his mother to provide him with shelter and by his own testimony at times is homeless and therefore, unable to care for the children. Given his current unstable situation it is likely to continue into the future.

The court's ruling is supported by the clear and convincing evidence of record. Most striking is Boehm's abject failure to "develop and maintain a parental bond with his . . . child[ren] in a meaningful, supportive manner" by ceasing to have any

A child is a dependent child due to lack of proper parental care or control by his or her parent, reasonable efforts to remedy the circumstances have been unsuccessful or were not required, such cause of dependency is likely to continue or will not likely be remedied in the reasonably foreseeable future, and . . . [r]eturning such child to his or her parent is likely to cause serious physical, mental, moral, or emotional harm to such child or threaten the physical safety or well-being of such child; or . . . [c]ontinuation of the parent and child relationship will cause or is likely to cause serious physical, mental, moral, or emotional harm to such child.

interaction with them for a number of years. OCGA § 15-11-311 (b) (1). The juvenile court was thus justified in finding that the children were dependent based on Boehm's lack of parental care and control. OCGA §§ 15-11-310 (a) (5); 15-11-311 (b) (1).

Notably, the only justification he gave for the lack of contact with his children was "it just wasn't good for them to be around someone who is homeless, dirty and nasty all the time." And, although Boehm testified that he was no longer a drug addict, he never submitted to a drug screen either prior to or during the course of this litigation. See OCGA § 15-11-311 (a) (2). In addition to raising an inference that Boehm had not conquered his addictions, as found by the court, submitting to a drug screen was an absolute requirement under the divorce decree if he were to see the children. Additionally, Boehm had still not paid any child support despite his testimony that he now had a job. Thus, the court's finding that the dependency would likely continue was supported by clear and convincing evidence. See *In the Interest of A. B.*, 346 Ga. App. 2, 9 (1) (c) (815 SE2d 561) (2018) (where mother failed to complete case plan goals and provided no child support to the children, trial court did not err in finding dependency was likely to continue); *In the Interest of M.E.M.*, 272 Ga. App. 451, 454-455 (612 SE2d 612) (2005) (where mother abandoned children and did not visit them or provide for their support, and failed to maintain stable

housing and comply with case plan goals, trial court did not err in finding deprivation likely to continue under former version of Juvenile Code).

Nevertheless, Boehm contends he has rehabilitated himself by moving in with his mother and getting a job. However, given his admitted history of homelessness and inconsistent employment, as well as the drug use and the failure to submit to a drug test, the court was authorized in finding that, due to the instability of Boehm's situation, the dependency was likely to continue. See *In the Interest of L-M. C. L.*, 362 Ga. App. at 531 (3) ("[T]he juvenile court was authorized to consider the [parent's] past conduct in determining whether the causes of deprivation were likely to continue. And the decision as to a child's future must rest on more than positive promises which are contrary to negative past fact.") (citation omitted); *In the Interest of R. S. T.*, 345 Ga. App. 300, 308-309 (1) (b) (812 SE2d 614) (2018) ("Juvenile courts are authorized to find that a parent's conduct over the years was a better predictor of [his] future conduct than a few months of partial stability. Thus, judging the credibility of the [father's] good intentions was a task for the juvenile court.") (citations and punctuation omitted).

*Judgment affirmed. McFadden, P. J., and Brown, J., concur.*